DENNIS R. INGOLS, ESQ., CSB#236458
LAW OFFICE OF DENNIS R. INGOLS
111 North Market Street, Suite #300
San José, California 95113
T: 408-601-0126
dennis@ingolslaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN DAVIS, J.J.D, a minor, by and through his Guardian Ad Litem, JORDAN DAVIS, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF CONTRA COSTA, VERNITA JAMES, NICOLE MARTINEZ, CHRISTIAN HUTCHINGS, CITY OF ANTIOCH, ASHLEY CRANDALL, BRIAN ROSE, and DOES 1-20, <br><br> Defendants. | Case No. 4:21-CV-04651 <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (43 U.S.C. § 1983)** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs, JORDAN DAVIS, and J.J.D., a minor, by and through his Guardian Ad Litem JORDAN DAVIS ("Plaintiffs"), respectfully represent and allege as follows:

### I.   <u>JURISDICTION & VENUE</u>

1.      Plaintiffs brings this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights secured

1

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

to Plaintiff under the United States Constitution, including the First, Fourth, and/or Fourteenth Amendments, under federal law, and California law where applicable as stated herein.

2. This Court has jurisdiction over all causes of action asserted herein because all causes of action arise out of conduct undertaken by Defendants in the State of California, County of Contra Costa.

3. Venue properly lies in the U.S. District Court for the Northern District of California in that the events and circumstances herein alleged occurred in the County of Contra Costa, and at least one Defendant resides in the County of Contra Costa.

## II.  **PARTIES**

**PLAINTIFF'S**

4. Plaintiff, JORDAN DAVIS, ("JORDAN", and/or "Father") was at all times relevant to the facts and circumstances herein an individual residing in the County of CONTRA COSTA. JORDAN. JORDAN is the father of J.J.D.

5. Plaintiff, and his mother Dolly, were the primary family unit of minor child, J.J.D. (male, born August, 2017). When referred to individually herein, they will be addressed as JORDAN or Father and Dolly or Grandmother.

6. J.J.D. was at all times relevant to the facts and circumstances herein an individual residing in the County of CONTRA COSTA. J.J.D. is the son of JORDAN DAVIS.

7. Prior to the involvement of the County of Contra Costa Department of Children & Family Services ("CPS") and the individual Defendants named herein below in the lives of the Plaintiffs, Plaintiffs, and Dolly lived together, and they enjoyed all of the love, mutual affection, and support of a parent/grandparent – child relationship, as a family unit.

8. The minor child's name is reduced to initials in these pleadings in order to protect the child's privacy. Plaintiffs intend to use this designation unless and until such time the Court orders otherwise**.**

2

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

9.     At all times relevant herein, prior to the removal of the child from Plaintiff JORDAN's care by Defendants, JORDAN raised, nurtured, provided guidance, and cared for the child.

10.    At all times prior to the wrongful removal and continued detention of the child by Defendants, Plaintiffs enjoyed the company, companionship, and society of each other, and all other benefits and obligations of his rights of familial association with the child, and the child with him.

**DEFENDANT COUNTY OF CONTRA COSTA**

11.  Defendant COUNTY OF CONTRA COSTA ("COUNTY") is a municipality in corporate form, organized and existing under the laws of the State of California. The Children & Family Services / Employment & Human Services, commonly referred to as "Child Protective Services" or "CPS" (hereinafter "CPS") is a COUNTY governmental agency organized and existing pursuant to the law and policies of Defendant COUNTY, which together with COUNTY, promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual Defendants, VERNITA JAMES, NICOLE MARTINEZ, CHRISTIAN HUTCHINGS, and Does 1 – 20, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or procedures, and/or failure to train, whether or not promulgated in written form, encouraged, or allowed to persist by Defendant COUNTY. COUNTY condoned, ratified, and ignored without remediation the conduct of the social worker Defendants pursuant to said policies, practices, customs, and procedures, as complained of herein.

12.    As the employer of social workers and their supervisors, COUNTY and/or CPS had primary responsibility for the training, education, and supervision of social workers, emergency response workers, dependency intake workers, placement workers, and all other CPS personnel, and CPS supervisors.

13.    Plaintiffs hereby sue all agencies and departmental units of COUNTY specified hereinabove under the designation of COUNTY herein, and/or interchangeably with CPS.

3

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

**Defendant VERNITA JAMES**

14.   Defendant VERNITA JAMES, ("JAMES") whose acts as alleged herein were performed in an individual capacity or as an employee of COUNTY and under color of state law, was an "emergency response" worker for CPS.

15.   JAMES, in consultation with CITY Defendants and her supervisor, removed J.J.D. from JORDAN. JAMES later included false statements of fact, or made representations of fact with deliberate indifference to the truth or falsity of the factual representations, withheld or omitted various exculpatory or explanatory facts, and aimed to deprive Plaintiffs of their constitutionally protected rights.

**Defendant NICOLE MARTINEZ**

16.   NICOLE MARTINEZ ("MARTINEZ") prepared and signed under oath the very first report in the case, entitled the "Detention/Jurisdiction Report." It was signed on July 9, 2019, and filed either that day or the following day. In the initial report, MARTINEZ intentionally included false statements of fact, or made representations of fact with deliberate indifference to the truth or falsity of the factual representations, withheld or omitted various exculpatory or explanatory facts, and aimed to deprive Plaintiffs of their constitutionally protected rights.

**Defendant CHRISTIAN HUTCHINGS**

17.   CHRISTIAN HUTCHINGS was MARTINEZ' direct supervisor charged with the responsibility to ensure that all of the information/evidence uncovered during the investigation was honestly and accurately disclosed to the juvenile court in a timely manner, whether or not that information/evidence was helpful or harmful to the position taken by CPS.

18.   HUTCHINGS reviewed and signed the Detention/Jurisdiction Report.

**DEFENDANT CITY OF ANTIOCH**

19.   Defendant CITY OF ANTIOCH ("CITY") is a municipality in corporate form, organized and existing under the laws of the State of California, and has as an administrative subunit thereof the Antioch Police Department ("APD"), (hereinafter, CITY and/or APD).

4

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

20.    Plaintiffs hereby sues all agencies and departmental units of CITY specified hereinabove under the designation of CITY herein, and/or interchangeably with APD.

21.    ASHLEY CRANDELL, ("CRANDELL"), whose acts as alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a law enforcement officer, employed by CITY.

22.    BRIAN ROSE, ID#4309, ("ROSE"), whose acts as alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a law enforcement officer, and CRANDELL's supervisor, employed by CITY.

23.     Plaintiffs contend that the policies, practices and procedures of CPS and/or APD aforesaid and herein below, and the inadequacy of that training and failure to take any remedial steps led to a culture which routinely violates the constitutional rights of families snared in the juvenile dependency system in the COUNTY of Contra Costa and/or CITY of Antioch. The policies, practices, customs that cause these violations are set forth below, and each is implicated in this case brought by Plaintiffs.

**COUNTY'S DEFICIENT POLICIES, PRACTICES, PROCEDURES, CUSTOMS**

24.    Plaintiffs are informed and believes, and thereon alleges, that COUNTY was so inept, inadequate, and inconsistent, in the provision of training, education, and supervision of its employees in issues related to proper and lawful investigation of child abuse and neglect referrals, and the use of protective custody warrants, as to constitute deliberate indifference to the rights and safety of citizens who are interviewed, investigated or otherwise come in contact with COUNTY personnel in the context of a child abuse investigation.

5

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

25.    COUNTY policies as they relate to CPS social workers employed by COUNTY, are

contained in the "Contra Costa County Employment & Human Services Dept. Manual"

(hereinafter "COUNTY MANUAL").

26.    The COUNTY MANUAL has subsections, addressing topics like grievance procedures

for foster parents (31-020.1), Indian Child Welfare Act (31-608), Emergency Response

Program (31-084), and so on.

27.    Notably, section 31-084, Emergency Response Program, the section that would be most

appropriate to contain COUNTY policies regarding the current state of the law as it relates to

obtaining warrants and the exigent circumstances exception to the warrant requirement, was

last revised on 8-15-1984. 1984! Prior to most of the major case decisions in this area of law.

Prior to *Beltran*. Prior to *Wallis*. Prior to *Rogers*.

28.    The COUNTY MANUAL sets forth COUNTY policy as it relates to the warrantless

removal of children in section 31-084, page 26: "When removal is necessary, the Social

Worker shall…arrange with law enforcement using [form] DC 23, Authorization for

Temporary Custody…"

29.    Interestingly, The COUNTY MANUAL, at 31-084, page 27, does make reference to

phone numbers for COUNTY employees to contact judges after hours (including weekends –

July 6, 2019 was a Saturday) when they need to obtain judicial authorization for medical issues.

No reference is made in regards to obtaining a warrant to remove a child. In either event, no

call was made, as Defendants did not even attempt to obtain a warrant.

30.    In fact, pursuant to COUNTY policy, Defendants did not even consider it. COUNTY

Defendants wanted to remove J.J.D., so they called law enforcement, rather than a judge.

6

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

31.     Moreover, this COUNTY policy and practice, of calling law enforcement rather than a judge or magistrate, exists not to protect the rights of residence of COUNTY, but rather to insulate COUNTY social workers from civil liability by trying to pass responsibility for removal decisions to law enforcement, such as CITY Defendants.

32.     CITY Defendants, in turn, blindly sign form DC23 when COUNTY employees ask them to.

33.     Nowhere does the COUNTY MANUAL talk about the constitutional requirement to obtain a warrant to remove a child, nor the federal law regarding the exigent circumstances exception to the warrant requirement.

34.     Relatedly, the COUNTY MANUAL does not make any reference to the requirement that, in the event of a warrantless removal based on alleged exigent circumstances, the "scope of the intrusion be limited to that which is reasonably necessary to avert the specific injury."

35.     COUNTY MANUAL does not contain a single citation to any federal authority on warrantless removals of children. Not *Rogers v. San Joaquin*,(9th Cir. Cal. 2007) 487 F.3d 1288. Not *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000). Not *Fredenburg v. County of Santa Clara*, 407 Fed. Appx. 114 (9th Cir. 2010). Not *Anderson-Francois v. County of Sonoma*, 415 F. App'x 6 (9th Cir. 2011).

36.     Plaintiffs further allege that COUNTY has either a written policy, practice, and/or procedure, and/or an unwritten custom, policy, practice and/or procedure, in the context of child abuse investigations and reporting or testifying to a court, whereby exculpatory evidence, mitigating evidence, or any other evidence or information which comes to the employee's attention, which information contradicts the position that the child and/or children should be subject to the jurisdiction of the court is either not included in any reports of the investigation

7

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

or testimony to the court at all, and/or is minimized or otherwise diminished from its full import, or deliberately portrayed in a manner least likely to negatively affect the effort to seek juvenile court jurisdiction over the child and/or children by the juvenile court, and/or criminal prosecution of the accused abusive or neglectful parent or guardian of a child and/or children.

37.   THE COUNTY MANUAL lacks anything that would have educated or informed COUNTY Defendants of the constitutional limitations on their conduct, and thereby prevent the Constitutional violations committed by COUNTY Defendants complained of herein.

38.   The COUNTY MANUAL does not even mention warrants to remove children, or when they are or are not required.

39.   The COUNTY MANUAL does not even mention how to obtain a warrant to remove children.

40.   The COUNTY MANUAL does not even mention the Fourth or Fourteenth Amendments to the U.S. Constitution.

41.   Nor does the COUNTY MANUAL contain words like "honest," "exculpatory," or "perjury."

42.   COUNTY does teach COUNTY social workers, in PowerPoint or similar slides, that "In Petition Writing, Ask Yourself…What Do You Want the Court to Find TRUE"? There is no follow-up slide discussing exculpatory information, telling the full story, that perjury is bad, etc.

43.   COUNTY also uses a document, labeled "CALSWEC CC3.0 Foundation Block: Documentation Practice and Court Report Writing Course" (hereinafter "Court Report Writing Course") to train its employees regarding the critically important, *daily* function of COUNTY social workers of preparing reports to the juvenile court.

8

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

44.     The Court Report Writing Course materials do not make a single reference to the importance of being truthful, accurate and complete in reports to the juvenile court, exculpatory information, telling the full story, that perjury is bad, that judicial deception deprives parents and children of their fundamental, constitutional rights.

45.     Neither form mentions warrants to remove children, or how to obtain one.

46.     The COUNTY MANUAL does not even mention "exculpatory evidence."

47.     COUNTY also has a policy, practice, procedure and/or custom of combining the Detention Report and the Jurisdiction Report.

48.     The Detention Report is the first report in a case, related to the Detention Hearing, which is similar to an arraignment in criminal court.

**CITY'S DEFICIENT POLICIES, PRACTICES, PROCEDURES, CUSTOMS**

49.     Plaintiffs are informed and believes, and thereon alleges, that CITY was so inept, inadequate, and inconsistent, in the provision of training, education, and supervision of its employees in issues related to proper and lawful investigation of child abuse and neglect referrals, and the use of protective custody warrants, as to constitute deliberate indifference to the rights and safety of citizens who are interviewed, investigated or otherwise come in contact with CITY personnel in the context of a child abuse investigation.

50.     CITY does not have "training materials, presentations, lectures, handouts, PowerPoint Presentations, or other documents … teaching the circumstances under which an Antioch Police Department employee may lawfully remove a child form the custody of his or her parent(s) without first obtaining a court order, and/or warrant, or parental consent."

9

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

51.    CITY does not have any "documents evidencing, referring, constituting, and/or relating to training …regarding the procedure for an Antioch Police Department employee to follow to obtain a warrant to remove a child from the custody of his or her parent(s)."

52.    CITY does have the "Antioch Police Department Policy Manual" (hereafter "Policy Manual") (http://www.antiochca.gov/fc/police/apd-policy-manual.pdf), which covers numerous subjects related to the duties of CITY police officers.

53.    Most of the Policy Manual is not relevant hereto, as it covers a wide range of topics not at issue herein. Policy 606 and its subsections, which cover "Child Abuse," are relevant.

54.    Policy 606.6 dictates that "Generally, removal of a child from his/her family…should be left to [COUNTY DEFENDANTS]."

55.    Policy 606.6, "Protective Custody" lacks anything that would have educated or informed CITY Defendants of the constitutional limitations on their conduct, and thereby prevent the Constitutional violations committed by CITY Defendants complained of herein.

56.    Policy 606.6 does say that "[CITY officers] should remove a child …without a court order only when no other effective alternative is reasonably available and immediate action reasonably appears necessary to protect the child. (Welfare and Institutions Code §305)." However, it does not explain the exigent circumstances exception of federal law. Nor does it even accurately explain Welfare and Institutions Code §305.

57.    Policy 606 does not even mention the Fourth or Fourteenth Amendments to the U.S. Constitution.

58.    Policy 606 does not even mention, not even in passing, *how* a CITY employee would obtain a warrant or court order to remove a child.

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

59.    Policy 606 does not even mention the limited scope of intrusion requirement of warrantless removal jurisprudence.

60.    Policy 606 does not even mention one single case decision from the relevant area of law. Not *Rogers v. San Joaquin*, (9th Cir. Cal. 2007) 487 F.3d 1288. Not *Beltran v. Santa Clara County*, 514 F.3d 906 (2008). Not *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000). Not *Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.,* 237 F.3d 1101 (9th Cir. 2001), Not *Fredenburg v. County of Santa Clara*, 407 Fed. Appx. 114 (9th Cir. 2010). Not *Anderson-Francois v. County of Sonoma*, 415 F. App'x 6 (9th Cir. 2011). Nothing.

61.    Policy 606.10 does indicate that "The Department should provide training on best practices" on a list of topics. Federal law is not one of the topics. Constitutional rights are not on the list. The trauma to parents and children from separation is not on the list. How to obtain a warrant is not on the list.

62.    Policy 606 was updated in March of 2020, yet the aforementioned deficiencies remain.

63.    In actual, widespread practice, CITY employees simply sign form "DC 23" or "Authorization for Temporary Custody" when COUNTY employees ask them to, as happened here.

**MONELL ALLEGATIONS COMMON TO CITY AND COUNTY**

64.    With neither training on, nor written policies, practices or procedures regarding when to obtain a warrant, or how to get one, limited scope of the intrusion, nor on constitutional mandates of truth, accuracy and completeness in reports to the juvenile court, Constitutional violations like those complained of herein were inevitable.

65.    The failure of COUNTY policy and training set forth in the preceding paragraph, as further expressed in the COUNTY MANUAL, shows COUNTY policy to be that law

11

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

1   enforcement will need to sign the protective custody form, known as "DC 23" or

2   "Authorization for Temporary Custody."

3   66.    CITY policy, on the other hand, dictates that "Generally, removal of a child from his/her

4   family…should be left to [COUNTY DEFENDANTS]."

5   67.    This combination of CITY and COUNTY policies, practices, procedures and/or customs,

6   predictably, inevitably, leads to constitutional violations such as those complained of herein

7   because both CITY personnel and COUNTY personnel both think the other is responsible for

8   making removal decisions, and neither knows the law.

9   68.    The lack of training, and the contradictory, finger-pointing policies create a perfect

10  storm of ignorance of the constitutional limitations on the removal of children, making

11  constitutional violations of the type complained of herein inevitable.

12  69.    Plaintiffs contend that the policies, practices, procedures, and issues of failing to

13  adequately train employees of COUNTY and/or employees of CITY of which Plaintiffs

14  complain herein, are inclusive but not limited to:

16       a.    the failure to institute training, or adequately train employees on the legal
         prerequisites that must confront an official in conducting a child abuse/neglect
17       investigation in order to lawfully remove a child/children from his/her/their
         parents or legal guardians without having first procured a warrant or court order
18       authorizing removal;
         b.    the failure to institute training, or adequately train employees situated such as
19       the individually named defendants herein, regarding the existence, method of
         obtaining, and use of protective custody warrants authorized under California
20       state law and/or employing the least intrusive means of ensuring a child's safety;
         c.    the creation and/or maintenance of a policy, practice, custom, and/or
21       procedure resulting in the repeated warrantless removal of children who are not at
         imminent risk of serious bodily injury;
22       d.    the creation and/or maintenance of a policy, practice, custom, and/or
23       procedure resulting in the repeated warrantless removal of children from a parent
         or legal custodian, without regard for federal or state law or the rights of citizens
24       pursuant thereto;

25

12

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

e.   the creation and/or maintenance of a policy, practice, custom, and/or procedure whereby no reasonable efforts are made to avoid removal of children from their parents and/or guardians in the first instance.

70.   Plaintiffs are informed and believe, and thereon allege, that the individually named Defendant social workers were decision makers in the making and/or implementation of COUNTY and/or CITY policy with regard to the removal and continued detention of children in the course of an investigation by CPS and/or APD employees into allegations of child abuse, and the de facto decision makers on the decision to remove children such as THE CHILDREN, from their parent(s) without a warrant, without exigent circumstances, and without consent.

71.   Plaintiffs are ignorant of the true names and identities of those Defendants sued fictitiously herein as Does 1-20, inclusive. Plaintiffs are informed and believes that said Defendants participated in some manner in the events set forth in this Complaint, or failed to participate in some manner, which acts or failures to act were in some manner a proximate cause of the injuries complained of by Plaintiffs herein, and for which, whether by conspiracy to violate the Plaintiffs' rights, agreement, inadequate supervision, inadequate training, consent, ratification, or active participation, such Doe Defendants are responsible and/or liable for the Plaintiffs' injuries and damages.

72.   Plaintiffs are informed and believes and, based upon such information and belief, alleges that at all times herein mentioned, JAMES, MARTINEZ, HUTCHINS, CRANDELL, ROSE and DOES 1-20, were each the agent and/or employee of their co-defendants, and each of them, and was acting within the scope, purpose and authority of CPS / COUNTY, and/or APD / CITY employment and with the knowledge, permission and consent of said co-defendants, and

13

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

1    each of them, and/or within the scope and purpose of a conspiracy to violate Plaintiff's rights as

2    complained of herein.

3    73.    Plaintiffs allege the foregoing policies, practices, and/or procedures directly cause or are

4    a substantial contributing factor to the violation of various constitutional and civil rights

5    afforded parents and their children under statutory and decisional law, such as occurred in the

6    events and circumstances complained of by Plaintiffs herein.

7    74.    Plaintiffs are ignorant of the true names and identities of those Defendants sued

8    fictitiously herein as Does 1-20, inclusive. Plaintiffs are informed and believe and thereon

9    allege that said Defendants participated in some manner in the acts or failures to act alleged

10   herein, or failed to participate in some manner constituting the intentional or negligent

11   omissions alleged herein, which acts or failures to act were in some manner a proximate cause

12   of the injuries complained of by Plaintiffs, and for which, whether by agreement, inadequate

13   supervision, inadequate training, consent, ratification, or active participation, such Doe

14   Defendants are responsible and/or liable for the Plaintiffs' injuries and damages. Does 1-20 are

15   subject to Plaintiffs' claims. Plaintiffs will seek leave to amend to name said Doe Defendants as

16   soon as possible.

17   75.    Plaintiffs are informed and believe and, based upon such information and belief, allege

18   that, at all times herein mentioned, each and every Defendant was the agent and/or employee of

19   their co-defendants, and each of them, and was acting within the scope, purpose and authority

20   of COUNTY and/or CITY, and with the knowledge, permission and consent of some or all

21   other said co-defendants, and each of them, or in the alternative, were acting in their individual

22   capacity.

23   76.    Plaintiffs are informed and believe, and thereon allege, that each of the named

24

25

14

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

individual Defendants herein did knowingly and willingly, with a common intent and scheme, set forth in further detail herein below, conspire to injure Plaintiffs, and deprive Plaintiffs of their rights, liberties, and interests in the comfort, care, and association as between Plaintiffs, their rights to Substantive Due Process and Procedural Due Process as such rights are afforded them under the U.S. Constitution and Bill of Rights, California state constitution and decisional law of the state and federal courts of California, and conspired generally to damage Plaintiffs and inflict great physical and emotional injury upon him.

77.     COUNTY has a policy, custom, or practice, of including false allegations, inflating and exaggerating partially true allegations, and omitting facts and circumstances exculpatory to allegations, in the Welfare & Institutions Code 300 Petitions and reports filed by social workers, and always with social worker supervisor approval, seeking to remove and take custody of children, or separate them from one parent or the other. In this case, such policy, custom or practice occurred in the filing of the W&IC 300 Petition and the reports that followed. This occurred in the juvenile case against JORDAN as set forth hereinbelow, and thus this policy, led to the violation of Plaintiffs' rights of familial association under the 1st, 4th, and/or 14th Amendment, described hereinbelow.

78.     Further conduct of this nature, lying and withholding of exculpatory or explanatory information – by all COUNTY Defendants, is alleged hereinbelow. All of this policy, practice or custom, or inadequate training caused conduct was a moving force behind continuing violations of the family's 1st, 4th, and/or 14th Amendment rights.

79.      The issue of COUNTY CPS social workers lying, falsifying, and withholding exculpatory information from information they provide to the Court, to the family members and their counsel, exists across all manner of reports or information obtained by CPS social workers, and conveyed – or not conveyed - to the juvenile dependency court, this include but is not limited to submitted Detention Reports, Jurisdiction Reports, Addendum Reports, Last Minute Reports, Disposition Reports, and basically any report of any kind made to the

15

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

juvenile dependency court by CPS.

80.     The failure to take steps to stop this manner of constitutionally violative conduct is an additional lawful reason in supporting the finding of *Monell* liability against the COUNTY.

81.     This failure to train or inadequate training leads to the repeated failure to engage professionals capable of dealing with the dynamics of said situations, when the social workers themselves are wholly inadequately equipped to properly or timely resolve such situations in the interests of the children or the family as a whole, and this is another of the moving forces behind the continuing violations of 1st, 4th and/or 14th Amendment rights of parents and children just as it was for Plaintiffs herein.

82.     Such *Monell* liability also exists based on the fact that COUNTY has failed to train at all and/or failed to train employees adequately on state and federal laws, statutes, and/or regulations implicated in the context of a child abuse/neglect investigation, and this is a moving force behind the violation of the 1st, 14th and/or 4th Amendments of the Plaintiffs herein, as detailed in this Complaint hereinbelow.

83.     For these policies, procedures, practices/customs, and inadequate or non-existent training, Plaintiffsf does hereby seek to hold COUNTY responsible in whole or in part for the conduct of the individual Defendant-employees of COUNTY herein named, as well as their failures to act.

**PETITIONS, DETENTION REPORTS, JURISDICTION REPORTS**

84.     A juvenile dependency petition, is a document sworn to under penalty of perjury, and contains elements of various grounds for alleging child abuse or neglect, all pursuant to W&IC §300.

85.     In juvenile dependency cases within COUNTY, there exists a unit/department of workers who prepare Petitions to commence juvenile dependency cases.

86.     If the Petition unit has absolutely no personal knowledge of any of the claims alleged in a Petition.

16

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

87.   COUNTY policy does not require the Petition unit worker to do any investigation of any kind into the claims the Petition unit worker then includes in a Petition.

88.   The Petition unit worker is not required by COUNTY policy to even contact the investigating social worker who performed the investigation that led to the filing of a Petition.

89.   The Petition is signed under oath despite zero personal knowledge about the facts or circumstances alleged in the Petition by the signing Petition unit worker.

90.   The Petition is then subjected to a *prima facie* standard at the initial Detention Hearing in juvenile court, whereby all the allegations are deemed true, the juvenile court can, and usually will, on that *prima-facie* standard then order children to continue separated from one or both parents, living in foster care, with non-relative extended family members, or with relatives, pending the Jurisdiction Hearing. The Detention Hearing is analogous to a criminal arraignment, whereas the Jurisdiction Hearing is analogous to the trial.

91.   Here, COUNTY has a policy, practice, procedure and/or custom of combining the Detention Report and the Jurisdiction Report, although the two reports, like the two hearings to which they relate, are distinct, with distinct purposes and evidentiary standards to be met, and are typically schedule several days or weeks apart.

92.   The COUNTY trains, and the social workers know, that the juvenile court is required to take their reports, such as the Initial Detention Hearing Reports, Addendum Reports, Last Minute Reports, and Jurisdiction/Disposition Reports, into evidence when making decisions of any and all nature that arise in juvenile dependency proceedings, and that knowledge is abused by the repeated use of false statements – even completely fabricated evidence, misrepresentations, and a favored route of deception and manipulation of the single most important legal proceedings parents and children may ever find themselves involved in, the repeated omission of facts or evidence known to the social worker, which if known to the Juvenile Court would materially change the outcome of the Juvenile Court's decisions, invariably impacting them favorably for the reunification of parent and child, and negatively

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

1   as to the relief sought by the COUNTY.

2   93.   The COUNTY, by not training its employees of the constitutional rights at issue in

3   their work, as well as their duty under California Welfare & Institutions Code §309 for each

4   social worker in a case to conduct an independent investigation of the facts, and combining

5   the Detention and Jurisdiction Reports, creates a virtual certainty that the juvenile court will

6   be provided with, at best, outdated information, and more disturbingly, false information.

7   And it happened here.

8   94.   As but one example, the Detention/Jurisdiction Report submitted in this case contains

9   false allegations of drug use by JORDAN. Even the Defendants' own investigation after the

10  removal of J.J.D. revealed that JORDAN offered to test, and did in fact test negative/clean for

11  illegal drugs or substances. Had the Defendants written separate reports, they *could* have

12  provided the juvenile court with this updated, exculpatory information. Whether they actually

13  *would* have, given the lack of either a written policy or training about telling the truth,

14  including exculpatory information, is a separate and distinct problem. Either problem subjects

    the COUNTY to *Monell* liability.

15  **DOE DEFENDANTS**

16  95.   Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein

17  as DOES 1-20, inclusive, and therefore sue them by such fictitious names. Plaintiffs will

18  amend this Complaint to show the true names and capacities of said DOE Defendants when

19  the same are ascertained and their roles in the actions/inactions, malfeasance/misfeasance, and

20  conspiracy/ conspiracies alleged herein are known.

21  96.   Plaintiffs are informed and believe and, based upon such information and belief, allege

22  that at all times herein mentioned, JAMES, MARTINEZ, HUTCHINGS and Does 1-20, were

23  each the agent of each other, and/or employees of their co-defendant COUNTY, and each of

24  Defendants was acting within the scope, purpose, and authority of their employer, COUNTY,

25  and with the knowledge, permission and consent of one or more of their co-defendants.

18

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

97.    Plaintiffs allege that the actions/inactions of the Defendant social workers, JAMES, MARTINEZ, HUTCHINS, and Does 1-20 complained of, were at all or many times undertaken, or actions were not performed, within the scope and purpose of instituting or furthering a joint plan or conspiracy to violate the Plaintiffs' rights to familial association with each other, and the child J.J.D.'s rights to be free from an unlawful seizure, and to enjoy his familial association rights with his father.

98.    This conspiracy included as its aim, violating the Plaintiffs' constitutional rights to juvenile dependency court proceedings free from perjurious and misrepresented statements of fact by Defendants, and included the routine withholding of exculpatory information from the Court and all parties' Counsel.

99.    Plaintiffs are informed and believe that the individual Defendants named herein, including the Doe Defendants participated in some manner in the events set forth in this Complaint, or failed to participate in some manner, which acts or failures to act were in some manner a proximate cause of the injuries complained of by Plaintiffs herein, and for which, whether by conspiracy to violate the Plaintiffs' rights, unlawful agreement, inadequate supervision, inadequate training, consent, ratification, or active participation, such Doe Defendants are responsible and/or liable for Plaintiffs' injuries and damages.

100.   Plaintiffs are informed and believes and, based upon such information and belief, alleges that each of the individually named Defendants is responsible in some manner for the events, circumstances, happenings, errors, negligence, omissions, malfeasance, and related violation of the Plaintiffs' rights complained of herein and their conduct individually and/or collectively was the legal cause of injury and damages to Plaintiffs' alleged herein.

101.   Plaintiffs are informed and believe and, based upon such information and belief, allege that, at all times herein mentioned, each and every Defendant was the agent and/or employee of their co-defendants, and each of them, acting at all relevant times herein under color of the authority of a governmental entity and under, though often in contravention of, the statutes,

19

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

ordinances, regulations, customs and usage of the State of California and/or the United States Constitution and related laws implicated in the work performed by social service workers and the investigation of referrals containing allegations of child abuse and/or neglect. The Defendants were acting under color of state law.

### III. FACTUAL ALLEGATIONS

102.   Plaintiff JORDAN married J.J.D.'s mother, Alexandra, in 2017, and J.J.D. was born later in 2017.

103.   JORDAN filed for divorce on or around July 2, 2018. At that time, and continuing thereafter until July 2019, J.J.D. resided with JORDAN and Dolly.

104.   JORDAN had sole custody, pursuant to an order of the family court dated October 15, 2018.

105.   On July 3, 2019, Alexandra, who was approximately 8-9 months pregnant with another man's child, traveled from her home in Reno, Nevada, to the Antioch, California area.

106.   On July 5, 2019, Alexandra gave birth to a baby girl.

107.   Alexandra confessed to regularly abusing a number of hard drugs throughout her pregnancy, particularly methamphetamines, including the week of the baby's birth.

108.   At birth, both Alexandra and the baby tested positive for various illicit drugs. Naturally, hospital personnel called CPS to make a child abuse/neglect referral related to the drug test results.

109.   JAMES responded to the hospital to begin an investigation on July 6, 2019, at approximately 10:00a.m.

110.   Alexandra told JAMES about her drug use, and that she did not want to care for her newborn, but wanted to put her up for adoption.

111.   Alexandra told JAMES that she had a bus ticket back to Reno, NV, and would be leaving around noon that day – alone. She informed JAMES that she did not plan to live with JORDAN or J.J.D. or the newborn.

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

112.   Alexandra told JAMES that JORDAN was **not** the father of the newborn baby girl.

113.   Alexandra told JAMES that she was not in a relationship with JORDAN.

114.   Alexandra told JAMES that J.D.D. lived with JORDAN and Dolly.

115.   Pursuant to COUNTY policy, practice, procedure and/or custom, JAMES then went to the home of JORDAN and Dolly, located in Antioch, California on the same day, July 6, 2019, at approximately 2:00p.m.

116.   JAMES called APD to request officer(s) come to Plaintiff's home. Two APD officers, CRANDALL and ROSE, arrived within minutes of JAMES.

117.   Within minutes after arrival, the two APD officers left after telling Dolly that her floors were clean enough to eat off of, that everything seemed fine, and that Dolly obviously posed no risk to JAMES' safety. JAMES also noted that the child had no injuries, and was not at any risk.

118.   The two CITY officers conducted no investigation whatsoever, nor made any efforts to do so, other than a cursory glance around the home.

119.   None of the Defendants, individually or collectively, made any effort to avoid removing the child, to discuss any alternatives to removing the children, or to in any way minimize the scope of the intrusion upon the Plaintiff's' constitutional rights.

120.   JAMES told the officers that the children (plural, referring to both J.J.D. and Alexandra's newborn that was not JORDAN's child) would be removed and released to DOLLY.

121.   As the officers were leaving, JAMES asked the officers to sign a form authorizing the removal of both J.J.D. and Alexandra's newborn baby. CRANDALL signed it, seemingly without reading it.

122.   JAMES and the officers did not discuss obtaining a warrant to remove J.D.D. This was predictable, as neither COUNTY nor CITY policy instructed them of the need, nor on how to obtain one.

21

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

123.   The officers left the home, and did not return.

124.   Turning back to Dolly, JAMES asked to see J.J.D. to confirm his well-being. Dolly complied, sitting in a chair with J.J.D. resting peacefully in her arms.

125.   JAMES then asked where JORDAN was. Dolly explained that JORDAN was out of town for the day, at a family reunion, and that he would return the following day. JAMES reported this as "[JORDAN] has not been in the home for the past 3 weeks."

126.   JAMES asked Dolly about Dolly taking custody of J.J.D. and the newborn. Dolly said she could not take care of the newborn, as it was not JORDAN's, though it might be different if the newborn were JORDAN's.

127.   JAMES then told Dolly that she had no authority to have the child, J.J.D., so she would be removing J.J.D.

128.   JAMES would later falsely tell the juvenile court that APD removed the child.

129.   Dolly told JAMES that she was the child's paternal grandmother, that the child had lived in her home since birth, that JORDAN had sole custody of J.J.D. pursuant to an order of the family court, and that she was caring for the child.

130.   Dolly showed JAMES the family court order. JAMES would later report to the juvenile court simply that the divorce was not finished, completely omitting the custody order so as to mislead the juvenile court.

131.   JAMES then told Dolly that she had minutes to pack a bag, because she claimed she had a "warrant" to remove J.J.D.

132.   JAMES then submitted her "warrant" to Dolly. In actuality, the document was the same document CRANDALL had blindly signed; a completed DC23, "Authorization For Temporary Custody." It was not signed by a judge or magistrate.

133.   JAMES did not have a warrant or court order authorizing the removal. There was no warrant. JAMES lied.

134.   The completed DC23 form said, in pertinent part:

22

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

a. Per Welfare and Institutions Code, Section 305, I (CRANDALL - handwritten), have taken into custody the following minor(s) [J.J.D., and Alexandra's newborn daughter].

135. The form went on to state that CRANDALL then delivered the children to JAMES.

136. The APD officers had already left, and obviously did not "deliver" J.J.D. or the newborn to JAMES.

137. Dolly called the APD, and was assured that no APD officer had authorized the removal.

138. Plaintiffs allege, on information and belief, that all named Defendants integrally participated in the decision to remove the child, without a warrant or consent, and in the absence of exigent circumstances or an imminent risk of serious bodily injury to any of the children.

139. Defendant JAMES transported the child J.J.D. to a shelter.

140. The child was detained, away from his father and grandmother, from July 6, 2019, until December 2, 2019.

141. Neither the COUNTY-employed social workers, nor CITY-employed police officers involved herein made efforts to obtain a warrant to remove J.J.D., or to even investigate whether J.J.D. was at any risk of harm. He had no signs of injury, claimed no injury, and was in good health.

142. In fact, CITY personnel acknowledged to Dolly at the scene of the removal that J.J.D. was safe and well cared for with no safety factors.

143. In fact, even JAMES acknowledged that J.J.D. was sitting on Dolly's lap during her pre-removal interview, "hugging and kissing" Dolly.

144. In unlawfully removing J.J.D. without a warrant from the care of his father when he was not in imminent risk of serious bodily injury, nor in need of medical care, or otherwise in a

23

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

condition requiring immediate protection or attention by medical or mental health professionals, and in the use of the threats and intimidation against the Plaintiff, Defendants violated both federal and state law, and did so in a punitive and malicious fashion with reckless disregard for the rights of all claimants, violating their rights of familial association and freedom of association, procedural and substantive due process and causing Plaintiff severe and irreparable damage.

145.   Upon the removal of J.J.D., MARTINEZ, and HUTCHINS then prepared and had filed a Petition and a Detention/Jurisdiction Report, pursuant to California Welfare and Institutions Code §300, with the Juvenile Court alleging multiple counts of "Failure to Protect" the child, against JORDAN and Alexandra.

146.   While in the care, custody, and control of the COUNTY, the child J.J.D. received medical treatments, inoculations, medications, assessments and evaluations, and Plaintiff was not informed in advance nor given the opportunity to respond to proposals or intentions to have said medical goods or services administered to the child, in complete violation of the Plaintiff's and the child's rights of familial association, and in violation of the child's rights for his father's involvement in such decisions and personal attendance at medical procedures and evaluations.

147.   Furthermore, J.J.D. was mistreated in foster care. He would arrive to visits with Plaintiff JORDAN looking dazed, and medicated, with bruises or marks on his person, and even a broken tooth. Plaintiff JORDAN repeatedly asked for explanations for J.J.D.'s condition, but was given none.

148.   At one point, Defendants terminated visits for Dolly when Dolly insisted upon answers or explanations for J.J.D.'s injuries.

24

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

1

2

**July 9, 2019, Detention/Jurisdiction Report filed**

149.   On July 9, 2019, the Petition and Detention/Jurisdiction Report were signed and filed.

3

The Detention/Jurisdiction Report was signed by MARTINEZ and HUTCHINGS.

4

150.   Defendants deliberately, and/or with reckless disregard for the truth, conveyed false

5

and/or misleading information to the juvenile court, by way of their direct assertions and by

6

their omissions, in an effort to deceive the juvenile court into ordering the child's continued

7

detention and to find that the allegations were true, thereby extending the separation of

8

JORDAN and J.J.D.

9

151.   **July 10, 2019, Initial Hearing**

10

152.   On July 10, 2019, the Juvenile Court held the first hearing. A Detention Hearing is

11

similar to an arraignment, where charges are read and pleas are entered.

12

153.   At the first hearing, attorneys were appointed for JORDAN, Mother and the children.

13

14

Dolly was represented by private counsel.

15

**October 21, 2019**

16

154.   On October 21, 2019, CPS dismissed the Petition as to JORDAN, and returned J.J.D. to

17

his care. However, the case remained open as against J.J.D.'s mother. Court and COUNTY

18

oversight into Plaintiff's and J.J.D.'s lives would continue.

19

**July 20, 2020**

20

155.   The dependency case was dismissed on July 20, 2020, with full custody to JORDAN.

21

**DAMAGES**

22

156.   As a result of the conduct of Defendants, Plaintiffs suffered severe emotional distress,

23

anxiety and damage to his psyche, to such an extent as to cause physical manifestations of

24

pain and symptoms of nausea and severe depression, including but not limited to

25

25

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

sleeplessness, headaches, fatigue, malaise, irritability, inability to focus, loss of appetite, and loss of weight.  Plaintiffs developed an abiding fear and distrust of authority figures and particularly social workers.

157.   The incident of the removal also caused humiliation and embarrassment and loss of reputation in the community to Plaintiff JORDAN, caused the incursion of medical fees, therapy fees, attorney's fees, and expenses related thereto, and is likely to cause the incursion of further medical, therapy, and/or counseling fees in the future as well as expenses related thereto.

158.   Plaintiffs seek an award of exemplary (punitive) damages pursuant to California Civil Code §3294, and any state or federal laws authorizing the award of punitive damages, to make an example of and punish the individual Defendants, and in the hope of deterring future conduct of a similar nature.

## V.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

VIOLATION OF 1ST, 4TH AND/OR 14TH AM. FAMILIAL ASSOCIATION

RIGHTS– WARRANTLESS REMOVAL

PLAINTIFFS AGAINST ALL DEFENDANTS

159.   Plaintiffs re-alleges and incorporate paragraphs 1 through 155, inclusive, as though fully set forth at this point, as they relate to a Claim for Relief for a violation of Plaintiff's civil rights under the 1st, 4th and/or 14th Amendments to the United States Constitution, with regard to the violation of his rights of familial association with his child occasioned by the removal of J.J.D. from JORDAN by Defendants.

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

160.   Plaintiffs allege the removal of the minor child was undertaken without consent, probable cause, a protective custody warrant, or exigent circumstances justifying removal of the minor child. This claim includes all such allegations as against the unknown Defendants from COUNTY and/or CITY that participated, ratified, condoned, or made the decision with regard to the removal of the child on or about July 6, 2019.

161.   Plaintiffs re-allege the allegations of paragraphs 156 through 157 as said damages relate to a Claim for Relief for a violation of his civil rights as stated.

162.   The punitive damage allegations of paragraph 158 apply in this claim for relief to all individual Defendants, but not to entity Defendants COUNTY and CITY.

**SECOND CLAIM FOR RELIEF**

VIOLATION OF 14TH AMENDMENT

– JUDICIAL DECEPTION

PLAINTIFFS AGAINST ALL COUNTY DEFENDANTS

163.   Plaintiffs incorporate paragraphs 1 through 155 as though fully set forth herein, and allege as to all Defendants, and Does 1-20, as they relate to a Claim for Relief for judicial deception in that the repeated use of lies, fabricated evidence, misrepresentation of facts, and exclusion of exculpatory and/or explanatory information in presentations of documents to the juvenile dependency court, constituted an unlawful violation of substantive and procedural due process rights, including but not limited to familial association rights under 14th Amendment, and the right to be free from juvenile dependency proceedings imbued with lies, fabricated evidence, misrepresentation of facts, and exclusion of exculpatory and/or explanatory information in presentations of documents to the Court, as well as the withholding of evidence from parties and/or their counsel.

164.   Plaintiffs incorporate herein, the damage allegations of paragraphs 156 through 157, in relation to this Claim for Relief.

27

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

165.  The punitive damage allegations of paragraph 158 apply in this claim for relief to all individual Defendants, but not to entity Defendants COUNTY and CITY.

**THIRD CLAIM FOR RELIEF**

VIOLATION OF 4TH AMENDMENT

– UNLAWFUL SEIZURE

PLAINTIFF J.J.D. AGAINST ALL COUNTY DEFENDANTS

166.  Plaintiff J.J.D., by and through his Guardian Ad Litem, incorporate paragraphs 1 through 155 as though fully set forth herein, and allege as to all Defendants, and Does 1-20, as they relate to a Claim for Relief for unlawful seizure, which constituted an unlawful violation of procedural due process rights under the 4th Amendment.

167.  Plaintiffs incorporate herein, the damage allegations of paragraphs 156 through 157, in relation to this Claim for Relief.

168.  The punitive damage allegations of paragraph 158 apply in this claim for relief to all individual Defendants, but not to entity Defendants COUNTY and CITY.

**FOURTH CLAIM FOR RELIEF**

Monell Liability

(Plaintiffs v. COUNTY)

169.  Plaintiffs re-allege, adopt, and incorporate as if set forth at length at this point, paragraphs 1 through 155 above, and alleges that the policies, practices, procedures, customs, and/or non-existent or inadequate training described hereinabove, were a moving force in the violations complained of hereinabove with regard to Plaintiffs' rights.

170.  Plaintiffs allege these policies, practices, procedures, customs and training-related issues make the COUNTY itself liable for the actions of the individually-named Defendants, including DOES 1-20, and Plaintiffs seek to hold COUNTY liable thereon by this Complaint

28

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

1

2

under the theory of law set forth in *Monell v. Dep. of Social Services*, 436 U.S. 658 (1978) and its progeny.

3

4

5

6

171.   The policies, practices, procedures, customs, and/or non-existent or inadequate training of COUNTY social workers such as the Defendants, including DOES 1-20, were the moving force behind the removal, and the judicial deception throughout the juvenile dependency proceedings.

7

8

172.   Plaintiffs re-allege the allegations of paragraphs 156 through 157 at this point, as said damages relate to this Claim for Relief.

9

**FIFTH CLAIM FOR RELIEF**

10

Monell Liability

11

(Plaintiff v. CITY)

12

13

14

15

16

173.   Plaintiffs re-allege, adopt, and incorporate as if set forth at length at this point, paragraphs 1 through 155 above, and allege that the policies, practices, procedures, customs, and/or non-existent or inadequate training described hereinabove, were a moving force in the violations complained of hereinabove with regard to Plaintiffs' rights.

17

18

19

20

21

174.   Plaintiffs allege these policies, practices, procedures, customs and training-related issues make the CITY itself liable for the actions of the individually-named Defendants, including DOES 1-20, and Plaintiffs seeks to hold CITY liable thereon by this Complaint under the theory of law set forth in *Monell v. Dep. of Social Services*, 436 U.S. 658 (1978) and its progeny.

22

23

24

25

175.   The policies, practices, procedures, customs, and/or non-existent or inadequate training of CITY law enforcement officers such as the Defendants, including DOES 1-20, were the moving force behind the removal.

29

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651

1   176.   Plaintiffs re-allege the allegations of paragraphs 156 through 157  at this point, as said

2   damages relate to this Claim for Relief.

3                                          **JURY DEMAND**

4          Plaintiffs demands a jury trial as to all issues so triable.

5                                       **PRAYER FOR RELIEF**

6   WHEREFORE, Plaintiff respectfully requests that this Court:

7   1.) Award Plaintiffs special and compensatory damages in an amount to be proven at trial, but

8   in no event less than $2,000,000.

9   2.) Award Plaintiffs punitive damages against individual Defendants, and each of them, for

10  their extreme and outrageous conduct in complete disregard for the rights of the Plaintiffs;

11  3.) Award Plaintiffs statutory damages and/or attorney's fees against all Defendants as

12  allowed by 42 U.S.C. §1988.

13  4.) Grant Plaintiffs such other and further relief as the Court may deem just and proper.

14
    Dated: August 18, 2021            By:    The Law Office of Dennis R. Ingols
15

16                                           _____/S/ DENNIS R. INGOLS_____
                                             Attorney for Plaintiffs
17

18

19

20

21

22

23

24

25

First Amended Complaint
Jordan Davis, et al., v. County of Contra Costa, et al.
U.S. District Court for the Northern District of California
Case No.  4:21-CV-04651